IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:                                                                  BK 08-72432-CMS-7

**WALLEY DARNELL,**

       **Debtor.**

**ALABAMA ONE CREDIT UNION**
**f/d/b/a THE CREDIT UNION OF ALABAMA FCU,**

       **Plaintiff.**                                            AP 09-70002-CMS

vs.

**WALLEY DARNELL,**

       **Defendant**

## MEMORANDUM OPINION

This adversary proceeding came before the court on October 29, 2009 for trial on the Complaint to Determine Dischargeability of Debts filed by The Credit Union of Alabama, FCU ("Plaintiff"). (AP Doc 1). Marshall A. Entelisano appeared on behalf of Walley Darnell ("Debtor") and announced that the parties decided to forgo a trial and asked the court to base its ruling on the Joint Factual Stipulation ("Joint Stipulation") filed by the parties on October 28, 2009 (AP Doc. 20).

## JURISDICTION

The Bankruptcy Court has jurisdiction of Debtor's Chapter 7 case pursuant to 28 U.S.C. § 1334(a). This court has jurisdiction of this issue, a core bankruptcy proceeding, pursuant to 28

1

U.S.C. § 1334(b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

## FINDING OF FACTS

The following constitutes the relevant facts contained in the Joint Stipulation and in other documents filed with the court: On July 17, 2007, Debtor signed a Loanliner Loan and Security Agreement and Disclosure Statement ("Security Agreement") which granted Plaintiff a security interest in one 2005 Honda TRX 250 and one 2005 Honda TRX 350 (collectively "Collateral"). Debtor currently owes Plaintiff $12,316.57. On October 31, 2008, Debtor filed a voluntary Chapter 7 petition bearing case number 08-72432-CMS. (Bk. Doc. 1). Debtor listed the Collateral on Schedule B and scheduled the debt owed to Plaintiff on Schedule D. On his Statement of Intention, the Debtor indicated that he was going to surrender the Collateral to the Plaintiff. Shortly thereafter, Plaintiff found out that the Collateral had been stolen and that Debtor could not return the Collateral to the Plaintiff's possession. The Collateral was stolen at Debtor's hunting club after Debtor chained the Collateral to a tree. Debtor cannot recall the exact time and date of the theft, and the Joint Stipulation does not indicate if the theft was a prepetition theft or a post petition theft. Debtor did not file a police report at the time the Collateral was stolen because as thought filing such report would be futile. The Collateral had a value not exceeding $8,000.00 at the time of theft. Debtor did not list the theft of the Collateral on his Statement of Financial Affairs which, in question 8, requires debtors to "[l]ist all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case or **since the commencement of this case**." The Debtor has not filed an amendment to his Statement of Financial Affairs since the petition was filed. On

2

January 30, 2009, Plaintiff filed this adversary proceeding seeking a determination by this court that the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## CONCLUSIONS OF LAW

The question before the court is whether the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides, in pertinent part, that: "A discharge under section 727 . . . . of this title does not discharge an individual debtor from any debt . . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In a trial to determine dischargeability of a debt, the plaintiff bears the burden of proof and must meet this burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). The only evidence submitted in this case was a Joint Stipulation. The Joint Stipulation was extremely brief, consisting of seven short paragraphs containing facts and two paragraphs containing the arguments of each party. Using only this bare bones submission, this court was asked to determine whether the Debtor's conduct constitutes a willfull and malicious injury in violation of § 523(a)(6). For the reasons that follow, this court finds that it does not.

Before addressing the Plaintiff's arguments, the court would first note that there is no evidence to contradict the Debtor's assertion that the Collateral was stolen. Because there was no testimony, the court must rely solely on the documentary evidence available in this case and cannot make any determinations as to credibility of parties. In combing through the documents filed in this case, the court noticed that the Debtor did not list the theft anywhere on his petition. However, this does not mean that the theft did not occur. The Debtor's Statement of Financial Affairs requires the Debtor to report any loss due to theft that occurred during the year preceding the date of the

3

petition and any loss due to theft that occurred post petition. The parties only stipulated to the fact that the date of the theft was unknown. Therefore it is possible that the collateral was stolen more than a year before the bankruptcy petition was filed and the Debtor would not be required to report the theft, or that the collateral was stolen post-petition and did not inform his attorney of the loss so the Statement of Financial Affairs was not amended. Therefore, the fact that the theft was not listed on the Debtor's Statement of Financial Affairs does not prove that the theft did not occur. In addition, although the fact that the Debtor listed the collateral on his Schedule B and indicated that he proposed to surrender the collateral to the Plaintiff in his Statement of Intentions suggests that the Debtor had possession of the collateral when the petition was filed, it is not conclusive proof. Therefore, after careful consideration of the Joint Stipulation and the Debtor's Schedules, this court finds that the Collateral was stolen from the Debtor sometime after July 17, 2007, the date the Debtor entered into the Security Agreement.

Plaintiff asserts in its complaint that the Debtor converted its Collateral and that this conversion constitutes an intentional act "intended to injure the Plaintiff in that there was an objective substantial certainty of harm or injury that would result from the defendants actions."

The court will first address whether the Debtor converted Plaintiff's Collateral. Plaintiff appears to assert that the Debtor converted the Plaintiff's Collateral by allowing the Collateral to be stolen. "To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property. The gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights..." <u>Ex parte SouthTrust Bank of Alabama, N.A.</u>, 523 S.2d 407, 408 (Ala. 1988). There is no evidence that the Debtor wrongfully exercised dominion over the Collateral or

4

Case 09-70002-CMS    Doc 22    Filed 02/12/10    Entered 02/12/10 15:28:41    Desc Main
Document      Page 4 of 8

that the Debtor participated in any wrongful taking, wrongful detention, interference or illegal assumption of ownership of the Collateral. In fact, the evidence indicates that the only person who wrongfully exercised dominion over the Collateral was the unknown third party that stole the Collateral. See American General Finance v. Taylor (In re Taylor), 187 B.R. 736 (N.D. Ala. 1995) (holding that the plaintiff failed to prove that debtor intentionally or deliberately converted creditor's property which was stolen as a result of the debtor's domestic relations dispute). Therefore, the Plaintiff failed to prove that the Debtor converted the Collateral. Because the Plaintiff failed to prove that the Collateral was converted, and the Debtor did not admit that he converted the Collateral, this court finds that the Debtor did not convert the Collateral and that the Debtor is not liable for any damages the Plaintiff asserts it is owed as a result of the conversion of its Collateral.

The failure of the Plaintiff to prove that the Debtor converted the Collateral is not the end of the analysis: If Plaintiff can show that it suffered a willful and malicious injury perpetrated by the Debtor and that Plaintiff suffered damages as a result, Plaintiff has proven that the debt is nondischargeable pursuant to § 523(a)(6) and it does not matter that Plaintiff failed to prove that Debtor converted the Collateral. Section 523(a)(6) provides, in pertinent part, that: "A discharge under section 727 . . . . of this title does not discharge an individual debtor from any debt . . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To establish a prima facie case under § 523(a)(6), Plaintiff must establish by a preponderance of the evidence that: (1) the debt owed is one for willful injury; and (2) the debt owed is one for malicious injury. Fischer v. Scarborough (In re Scarborough), 171 F. 3d 638, 641 (8th Cir. 1999).

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating nondischargeability takes

5

a deliberate or intentional *injury*, not merely a deliberate and intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original). Therefore, only acts committed with the "actual intent to cause injury" are willful. See id. In the Joint Stipulation, Plaintiff argues that "the Debtor's intentional act [of] abandoning and chaining Plaintiff's collateral to a tree in the woods at a hunting club coupled with the Debtor's failure [to] file a police report and notify Plaintiff of the theft constitutes a knowing disregard and violation of Plaintiff's rights in the collateral. . . . Based on Debtor's conduct, the Plaintiff's rights in the collateral are irreparably harmed because Plaintiff can not make a timely claim with its own insurance carrier for the loss and can never recover the collateral."

For there to be a willful and malicious injury, the debtor must intentionally cause the Plaintiff harm. In this case, the Plaintiff would have to show that the Debtor intended for the Collateral to be stolen when he chained the Collateral to a tree or that the Debtor intended for the Plaintiff to be injured when he failed to notify the Plaintiff of the theft.

There is no evidence to indicate that the Debtor intended for the Collateral to be stolen. The only evidence before this court is that the Debtor chained the Collateral to a tree at his hunting club and that the Collateral was stolen. This evidence is insufficient to prove that Debtor intended for the Collateral to be stolen or knew that the Collateral would be stolen. First, there is no evidence as to the kind of chain the Debtor used to tie the Collateral to a tree: was the chain a thin chain easily broken or was it a thick chain that would require the use of a specialized tool to break? The answer makes a difference. In addition, there is no evidence as to whether there were previous thefts at the Debtor's hunting club. If there were no previous thefts, it would be hard for this court to determine that the Debtor knew the Collateral would be stolen if he left it chained to a tree or that the Debtor

6

knew that there was "an objective substantial certainty" that the collateral would be stolen. In short, this court just does not have enough evidence to conclude that the Debtor intended for the Collateral to be stolen or knew that the Collateral would be stolen if he left it chained to a tree at his hunting club. In the absence of such evidence, the court cannot conclude that the Debtor intended to injure the Plaintiff when he left the Collateral chained to a tree.

In addition, there is no evidence to indicate that the Debtor intended for the Plaintiff to be injured when he failed to notify the Plaintiff of the theft of the Collateral. Plaintiff states that the Security Agreement signed by the Debtor requires the Debtor to notify Plaintiff if the Collateral is damaged. Therefore, Debtor must have known that not telling Plaintiff this information would harm the Plaintiff. This court does not agree. A copy of the Security Agreement is attached to the Joint Stipulation and on the second page under paragraph 5 the Security Agreement provides that "among other things, the debtor would promptly notify us if the property is damaged, stolen or abused ..." Plaintiff alleges that by having failed to notify Plaintiff of the theft, the Plaintiff missed the deadline to file an insurance claim on the Collateral. However, there is no indication that Debtor knew Plaintiff carried insurance on the Collateral or that the Debtor knew that there was a deadline for the Plaintiff to file such a claim. In short, there is no evidence that the Debtor knew that harm would come to the Plaintiff if the Plaintiff was not made aware of the theft of the Collateral. Without such evidence, this court cannot conclude that the Debtor intended to injure the Plaintiff or knew that the Plaintiff would be injured if not informed of the theft of the Collateral immediately.

Because the Plaintiff failed to show that Debtor intended to injure Plaintiff and also failed to show that Debtor knew that Plaintiff would be injured as a result of Debtor's conduct, this court finds that the Plaintiff failed to prove a willful injury as required by 11 U.S.C. § 523(a)(6).

7

Therefore, this court overrules Plaintiff's objection to dischargeability.

An Order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this February 12, 2010.

<u>/s/ C. Michael Stilson</u>

C. Michael Stilson

United States Bankruptcy Judge